UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JUANITA VAUGHN**, | **2:18-CV-11491-TGB** |
| Plaintiff, | |
| vs. | |
| | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **DAWN FOOD PRODUCTS, INC.**, | |
| Defendant. | |

Plaintiff Juanita Vaughn alleges that her employer, Defendant Dawn Food Products, Inc., discriminated against her based on her race and disability, in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Michigan Elliot-Larsen Civil Rights Act. Because there exist no genuine issues of material fact and Plaintiff has failed to provide sufficient evidence such that a reasonable jury could find in her favor on any of her four claims, Defendant is entitled to summary judgment.

## I.    Background

Plaintiff Juanita Vaughn, an African American woman, began working for Defendant Dawn Food Products, Inc. ("Dawn") in June 2013 as a strategic sourcing manager. ECF No. 27, PageID.211. Her duties in that position involved procuring goods and services

1

needed to run Dawn's day-to-day business (as opposed to procuring raw materials for production). *Id.* Like other employees at Dawn, Plaintiff's performance was evaluated each year by her supervisor. *Id.* at PageID.212. Her immediate supervisor during most of the time period relevant to this lawsuit was John Wolf. *Id.* Performance ratings at Dawn range from 1-5, with 5 being the highest possible score. From 2014-2016, Plaintiff received performance ratings from Wolf ranging from "3" to "3.2," which under Dawn's rubric means "meets expectations." *Id.*

Then came 2017, and the events which give rise to this action. In 2017, by all accounts, Wolf and Plaintiff began to interact more regularly as a result of a new indirect procurement initiative. *Id.* According to Wolf, in 2017 Plaintiff's performance declined. In her 2017 review, Wolf stated that Plaintiff had not "demonstrated or shown an interest in developing internal relationships with stakeholders;" that "influencing outcomes through leadership and collaboration [was] not present;" that Plaintiff had not demonstrated that she was "willing to learn new things about Dawn;" that she had not come to work on a number of occasions; and that she had been pushing her work onto other employees. ECF No. 27-4, PageID.423-428. Wolf gave Plaintiff a 2.3, or "below expectations." *Id.* The 2.3 in 2017 was the lowest review Plaintiff had ever received (her previous reviews had been 3.0 or above), but

2

was not the lowest that Wolf had ever given—he had previously given a Caucasian male employee a lower score. *Id.* at PageID.402-414; Wolf Dep. ECF No. 27-5, PageID.494.

Upon receiving her disappointing 2017 performance review, on February 7, 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging that she had been given a "poor performance evaluation" because of her age, sex, and race. ECF No. 27-4, PageID.473. The February 7, 2018 EEOC charge did not provide any detail explaining why Plaintiff believed she was discriminated against based on her age, sex, and race. *Id.* In the Complaint for this civil action and in her deposition testimony, however, Plaintiff says that she believes that Wolf's low 2017 rating was based on race because Wolf had referred to her as "you people" multiple times during one-on-one meetings over the prior year, told her that she "needed to adjust herself," was "playing the victim," said he "did not hire her," did not allow her to travel, and generally treated her less warmly than other employees under his supervision. Second Am. Compl., ECF No. 23; Vaughn Dep., ECF No. 27-4, PageID.362-63. Wolf denies ever referring to Plaintiff as "you people," but doesn't deny that he told her that he didn't hire her. Wolf Dep., ECF No. 27-5, PageID.484. On the issue of whether Plaintiff had been denied the opportunity to travel, there is mixed testimony in the record. Plaintiff testified in her

3

deposition both that Wolf told her that she could not travel and that she did travel while working at Dawn under Wolf's supervision. ECF No. 27-3, PageID.284. Wolf says that she was allowed to travel—and did. Wolf Dep. ECF No. 27-5, PageID.501.

On February 15, 2018, Plaintiff began the process of formally disputing her 2017 performance review with Dawn. Vaughn stated that the review "was unfair and biased against [her] based on [her] race and ethnicity among other things." ECF No. 27-4, PageID.435. She provided Defendant with a detailed, written response to Wolf's 2017 evaluation, which explained why she believed that Wolf's evaluation was unfair. ECF No. 27-4, PageID.438-451. She stated that she believed that Wolf was unfairly holding her responsible for duties not within her job description, and Wolf was mistaken to believe that she was pushing work off on other employees when she was not. *Id.* While Plaintiff's response extensively disputed Wolf's reasons for his evaluation, it did not mention any instance of Wolf using the term "you people." *Id.*

In response to Plaintiff's EEOC complaint alleging discrimination, Defendant began an internal investigation, during which Defendant interviewed Plaintiff on two occasions, as well as Wolf and team members Craig Lydigsen, Maureen Dawson, and Jantzen Nishioka. ECF No. 27, PageID.214. On April 9, 2018, Defendant completed the investigation and issued a memorandum

4

detailing Dawn's findings. ECF No. 27-4, PageID.459. The investigation concluded that Plaintiff's allegations of racial bias were unsubstantiated, but that "there was a misalignment in 2017 between [Plaintiff] and [her] supervisor's expectations and understanding regarding [her] role and duties as Strategic Sourcing Manager II . . . ." *Id.* The investigation also found that Plaintiff's complaints regarding her projects being under-resourced were valid and that there was "limited documentation" of Wolf having discussed his performance concerns with Plaintiff before her 2017 evaluation. *Id.* Defendant subsequently raised Plaintiff's 2017 evaluation from a 2.3 to a 3 and stated that Dawn would approve her request to be moved out of the procurement department. *Id.*

To accommodate Plaintiff's request to be moved to a new position, Defendant told her that it would reassign her to a "special assignment," intended to last approximately three to six months while Defendant looked for a lateral position at Dawn commensurate with her skill set. *Id.* at PageID.459-460. Despite this change in position, Dawn agreed to continue to (and did) pay Plaintiff at her prior salary, including giving her a raise and bonus for 2017 that was in line with what she had received in prior years. ECF No. 27, PageID.216.

Before Plaintiff began work on the special assignment, however, Plaintiff went out on a 90-day medical leave for treatment

5

of anxiety and emotional distress, beginning on April 9, 2018. Vaughn Dep., ECF No. 27-3, PageID.321; ECF No. 27-4, PageID.463. On May 11, 2018, Plaintiff filed this civil lawsuit in federal court, alleging race and gender-based discrimination based on the performance evaluation and allegations of hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 and the Michigan Elliot-Larsen Civil Rights Act. Compl., ECF No. 2.

Upon Plaintiff's return from leave on July 2, 2018, Plaintiff requested certain accommodations under the Americans with Disabilities Act, including to work remotely for 90 days with only light travel, and to be assigned to a position that accommodated her "difficulty with concentration, negotiating, managing contracts, [and] interacting effectively with shareholders." ECF No. 27-4, PageID.467.

In late June and early July, Plaintiff had multiple phone conversations with Sue Littell at Dawn regarding the timing of her return to work and the new restrictions she would have once she returned. Vaughn Dep., ECF No. 27-3, PageID.330; Littell Decl. ¶ 8, ECF No. 27-7, PageID.518. Littell told Plaintiff that she was having difficulty finding a new role for Plaintiff that complied with her new restrictions because people were on vacation for the July 4th holiday and were not in the office. ECF No. 27-3, PageID.331-

32. Plaintiff does not contend that she knew of any open positions at that time that would have fit her restrictions. *Id.* Littell told Plaintiff that she didn't know how long it would take her to find a new position. *Id.*

On July 12, 2018, Plaintiff filed a second charge with the EEOC. ECF No. 27-4, PageID.474. In the second charge, Plaintiff alleged that Defendant discriminated against her based on her disability. *Id.* She stated that she requested a return to work date of July 2, 2018, but Defendant had not communicated with her regarding her accommodation, forcing her to remain on unpaid leave for what had at that point been ten days longer than she anticipated. *Id.* She stated that she "was able to perform the essential functions of [her] duties both with/without reasonable accommodation" and that remaining on unpaid leave was causing financial hardship for her. *Id.*

On July 13, 2018, Defendant sent a letter to Plaintiff's counsel stating that Dawn was having difficulty finding a position that exactly met Plaintiff's stated disability need because it was difficult to find a new position that "does not require the incumbent to concentrate or effectively interact with stake/shareholders." *Id.* at PageID.469. Defendant then offered Plaintiff a sales analyst role on a temporary basis, since it met some of Plaintiff's needs in that it would allow Plaintiff to work in the Romulus office and not the

Jackson office, would not require travel, would likely permit remote working, and would not report to Wolf. *Id.* Defendant envisioned Plaintiff staying in the sales analyst role for the duration of her 90-day ADA accommodations. *Id.* at PageID.470. The sales analyst role paid less than Plaintiff's prior position, but Defendant stated that Dawn would continue to pay Plaintiff her prior salary through the 90-day ADA accommodations period, or until October 2, 2018. *Id.* After that, Defendant said it would "work with [Plaintiff] to identify open positions for which she [was] qualified." *Id.* Plaintiff accepted the temporary sales analyst position. Vaughn Dep., ECF No. 27-3, PageID.336.

On October 16, 2018, Sue Littell emailed Plaintiff to invite her to apply for an open position as director of inventory planning and replenishment, to which Plaintiff responded saying she would apply. ECF No. 27-4, PageID.472. Plaintiff, apparently mistakenly believing that the position reported to Wolf, decided not to apply and consequently did not get the job. Vaughn Dep., ECF No. 35, PageID.931-32. Plaintiff stated that she regularly checked the company intranet for job postings but as of May 8, 2019, Plaintiff had not applied to any other positions at Dawn for which she believed she was qualified. Vaughn Dep., ECF No. 27-3, PageID.347. She is not aware of the existence of any positions for

which she would be qualified that were not listed on the intranet. *Id.* at PageID.355.

In late 2018 and early 2019, Dawn began a large corporate restructuring. Lioy Decl. ¶ 7, ECF No. 27-2, PageID.243. More than a dozen Dawn employees lost their jobs, and more than one hundred were moved to different, lower-paying positions. *Id.* Plaintiff's Romulus sales analyst position was eliminated. *Id.* at PageID.244. Wolf played no role in the decision to eliminate Plaintiff's sales analyst position. *Id.* Plaintiff has no knowledge as to the identity of the person at Dawn who made the decision to eliminate her sales analyst position. Vaughn Dep., ECF No. 27-3, PageID.351.

On March 11, 2019, Defendant offered Plaintiff the position of inventory planner, with a base salary of $88,940. *Id.* at PageID.476. At that point Plaintiff had been in the sales analyst role since July 2018—but was still being paid at her prior, higher $138,640.46 salary. *Id.* at PageID.338. In an effort to accommodate the salary cut she would have to absorb should she accept the new position, Defendant stated that it would incrementally reduce her salary over twelve months from $138,640.46 to $88,940. *Id.* Plaintiff was offered severance pay if she did not want to accept the inventory planner position and its lower salary. *Id.* at PageID.355.

Plaintiff decided to accept the inventory planner position. *Id.* at 356. But on March 25, 2019, Plaintiff filed a third EEOC

9

complaint, alleging that she had been "demoted in retaliation for participating in a protected activity in violation of the Age Discrimination in Employment Act of 1987 . . . Title VII of the Civil Rights Act of 1964 . . . and the Americans with Disabilities Act of 1990." ECF No. 27-4, PageID.475.

Plaintiff then filed the Second Amended Complaint on May 14, 2019, ECF No. 23, and resigned from her employment at Dawn on May 17, 2019. Lioy Decl. ¶ 14, ECF No. 27-2, PageID.245.

## II.   Legal Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

10

III. **Discussion**

a. <u>**Claim One: Racial Discrimination/Harassment in Violation of Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act (ELCRA)**</u>

i. **Contentions**

Plaintiff contends that she was discriminated against and subjected to an intimidating, hostile work environment because of her race. Second Am. Compl. ¶¶ 46-56, ECF No. 23, PageID.163-64. Specifically, she says she was given a low 2017 performance review that does not accurately reflect her actual performance and was "routinely and consistently treated differently than Caucasian employees by Mr. Wolf" because she is African American. *Id.* With respect to the latter, she claims that Wolf repeatedly referred to her as "you people;" "yelled at" her to "stop interrupting [him];" was told by Wolf "I never hired you" and "maybe you're the problem;" and was chastised for working from home too often. *Id.* ¶¶ 18-24.

Defendant argues that Plaintiff has failed to make out a prima facie case of racial discrimination because Plaintiff never suffered an adverse employment action. ECF No. 27, PageID.223. Defendant asserts that Plaintiff's primary complaint—that she was given a poor performance review because of her race—fails because Defendant raised her score after Plaintiff took the issue to Wolf's superiors, and Plaintiff ultimately suffered no material changes in

11

her employment benefits as a result. *Id.* Defendant further argues that Plaintiff can point to no similarly situated employee treated more favorably than her, and that, to the contrary, a Caucasian male employee previously received a worse performance review from Wolf than the one Plaintiff received. *Id.* at PageID.224.

With regard to Plaintiff's harassment claims, Defendant contends that they both lack merit and must be dismissed because Plaintiff failed to administratively exhaust those claims by not including them in her EEOC charges. *Id.* at PageID.226.

### ii. Legal Standard

Under both Title VII and the ELCRA, it is well established that Plaintiff may prove racial discrimination with circumstantial evidence under the *McDonnell–Douglas* burden-shifting framework. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992); *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) ("Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases."). Under that framework, before the burden shifts to Defendant, Plaintiff must first make out a prima facie case of racial discrimination by demonstrating that she (i) was a member of a protected class, (ii) was qualified for the position, (iii) suffered an adverse employment action, and was (iv) "treated differently than similarly situated non-

12

protected employees." *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001).

"An adverse employment action in the context of a Title VII discrimination claim is a materially adverse change in the terms or conditions of employment because of the employer's actions." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 625 (6th Cir. 2013) (internal quotation marks omitted). Termination, decrease in wage or salary, change in title, diminished material responsibilities, or a material loss of benefits are all examples of a materially adverse change. *Id.*

To establish a prima facie case of a hostile work environment based on race, Plaintiff must demonstrate that "(1) [she] is a member of a protected class; (2) was subjected to unwelcome harassment; (3) the harassment was based on plaintiff's protected status; (4) the harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions." *Fullen v. City of Columbus*, 514 Fed. App'x 601, 606–07 (6th Cir. 2013). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Factors to be considered include "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Id.* at 23.

If Plaintiff is able to make out a prima facie case of either type of discrimination, under the *McDonnell–Douglas* framework the burden then shifts to Dawn to articulate a nondiscriminatory reason for its actions. *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Once Dawn does so, the burden returns to Plaintiff to establish that Dawn's proffered reason(s) for its adverse employment decision(s) were pretextual. *Id.*

### iii. Analysis

Defendant does not appear to contest either that Plaintiff is a member of a protected class or that she was qualified for her position, and the Court will accordingly proceed as if both of these elements have been satisfied. The third element requires Plaintiff to show that she suffered an adverse employment action. The analysis will begin there.

Plaintiff's first allegation of an adverse employment action is her 2017 performance review. Plaintiff points to the fact that Wolf initially gave her a "below expectations" rating of 2.3 out of 5. ECF No. 27-4, PageID.423-428. Plaintiff alleges that the score was the product of racial discrimination and therefore represents an

adverse employment action sufficient to support her racial discrimination claim. After Plaintiff disputed the score given to her by Wolf—arguing, among other reasons, that Wolf gave her a low rating because of a misunderstanding regarding the scope of her job responsibilities—Defendant raised Plaintiff's score to a 3, or "meets expectations." *See, e.g.*, ECF No. 27-4, PageID.448 (Plaintiff's description of how she and Wolf had different understandings of the scope of her duties). Although a low performance rating that can affect an employee's pay level or other terms of employment might arguably be considered an adverse employment action, in this case Plaintiff "appealed" her low score and won. The score she cites as the product of discrimination was not her final score. Plaintiff was ultimately rated at a level "3," which is in line with the scores Plaintiff received on her performance reviews in 2014, 2015, and 2016. It is also undisputed that Plaintiff was never threatened with termination, suffered no salary reduction as a direct result of the 2017 performance review, and in fact later received a bonus in line with what she had received in prior years. Under the governing law of the Sixth Circuit, a mid-range performance review with no other loss in benefits is typically not sufficient to qualify as an adverse employment action. *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir.1999); *see also Epps v. FedEx Servs.*, 438 F. App'x 455, 458 (6th Cir. 2011) (negative performance review did not constitute adverse

employment action when it did not affect terms and conditions of employment). Accordingly, Defendant's conduct in connection with Plaintiff's 2017 performance review is not an adverse action by the employer, as is required to make out a prima facie case for Plaintiff's discrimination claims.

Though the Second Amended Complaint is less than clear in identifying which other actions by the Defendant are those that Plaintiff believes qualify as adverse employment actions, in her opposition to the motion for summary judgment Plaintiff argues that she suffered an adverse employment action when she was transferred by Defendant to her new, temporary position as a sales analyst. ECF No. 30, PageID.727-28. She claims that the new position was "a demotion with no pay loss" because she was not given significant responsibilities and "had no supervisor to sing her praises." *Id.* Plaintiff compares her move to the new position to cases where other courts have found adverse employment actions when employees were involuntarily transferred to less desirable lateral positions. *See, e.g.*, *Deleon v. Kalamazoo County Rd. Comm'n*, 739 F.3d 914, 919 (6th Cir. 2014).

The case law in this area leaves the Court in some doubt as to whether, on this record, Plaintiff's move to sales analyst would qualify as an adverse employment action. Plaintiff's transfer is distinguishable from cases of involuntary lateral transfer like

*Deleon* in that it was not involuntary: After her 2017 review, Plaintiff requested that she "be placed in another job or that [her] current job [be] moved away from [Wolf's] management." ECF No. 27-4, PageID.451. Though a plaintiff's having voluntarily requested a transfer "does not categorically bar a finding of an adverse employment action," under this Circuit's precedents, that plaintiff must be able to demonstrate that the conditions of the new position (here, that of a temporary sales analyst) were so "objectively intolerable to a reasonable person" that they constitute a "constructive discharge." *Deleon*, 739 F.3d at 919-20 (internal citations omitted). In this analysis, the Court must view the condition of her new role from the perspective of a reasonable person, and Plaintiff's "opinion of the transfer, whether positive or negative, has no dispositive bearing on an employment actions' classification as 'adverse.'" *Id.* at 921. Here, it is undisputed that Plaintiff received the same salary, bonus, and benefits in the sales analyst role as she did in her prior position. It is also undisputed that Plaintiff specifically requested that her new role accommodate her stated "difficulty with concentration, negotiating, managing contracts, [and] interacting effectively with shareholders." ECF No. 27-4, PageID.467. Though Plaintiff found the responsibilities assigned to her in the new position to be unfulfilling, her requirement to have a position that accommodated a 50% reduction

in her ability to concentrate and interact with others necessarily narrowed the scope of available roles that Dawn could assign her. ECF No. 27-4, PageID.469. Plaintiff additionally asserts that the sales analyst role was a demotion because she did not have a supervisor to "sing her praises," thereby limiting her opportunities for career advancement, but this claim is inherently speculative and devoid of factual support. ECF No. 30, PageID.728. There is no evidence in the record from which a juror could reasonably conclude that the sales analyst position was "objectively intolerable." For all these reasons, it is not clear that Plaintiff has raised a genuine issue of fact that the sale analyst transfer was an adverse employment action.

Despite all of the above, the Court recognizes that Defendant conceded this point at oral argument on July 15, 2020, and so the Court will assume that Plaintiff has established the adverse action element of her prima facie case. Even so, Plaintiff's prima facie claim still falls short. Plaintiff has identified no similarly situated employee who was given more favorable treatment, and thus cannot satisfy the fourth element of a prima facie claim.

Moreover, even if Plaintiff had established a prima facie claim, she has not put forth any evidence to rebut Dawn's proffered nondiscriminatory reasons for its actions. Dawn contends that Plaintiff was transferred to the sales analyst position because (i)

18

she requested to be transferred to a new position, and (ii) it was a position that was compatible with her accommodations, including her 50% reduced capacity to concentrate, negotiate and manage contracts, and interact with shareholders. ECF No. 27-4, PageID.467. Plaintiff has identified no other available positions compatible with her accommodations that she could have transferred to at the time, and she has put forth no evidence from which a reasonable jury could find that the move to the sales analyst role was pretext for discrimination. Moreover, far from evincing any intent to discriminate against Plaintiff, the evidence shows that Defendant encouraged her to apply for an open director position during her time in the sales analyst role. ECF No. 27-4, PageID.472 (email from Sue Littell encouraging Plaintiff to apply to open director of inventory planning position). On these facts, no reasonable juror could find that Plaintiff's move to sales analyst role states a claim of racial discrimination under Title VII or the ELCRA.

Finally, Plaintiff contends that she suffered an adverse employment action when her sales analyst role was eliminated in March 2019 and she was then offered a lower-paying position as an inventory planner. ECF No. 30, PageID.728. But Plaintiff offers no evidence to rebut Defendant's testimony that the position was eliminated as part of a legitimate corporate restructuring.

Likewise, Plaintiff has failed to identify any other position that was open at the time for which she was qualified, or any other similarly situated employee who was treated more favorably than she was at the time her position was eliminated. Even if the Court were to assume *arguendo* that the elimination of Plaintiff's sales analyst position amounted to an adverse employment action, Plaintiff's failure to offer more than conclusory statements about the action being pretextual or to identify another similarly-situated employee who was treated more favorably still leaves Plaintiff unable to establish the fourth element of a prima facie discrimination claim (that similarly situated employees were treated more favorably) and unable to rebut Defendant's nondiscriminatory reasons for eliminating her position. *See Newman*, 266 F.3d at 406.

With respect to Plaintiff's harassment claims, Plaintiff cites certain statements by Wolf that she alleges amounted to a hostile work environment. Second Am. Compl., ECF No. 23. Defendant contends that even if all the statements Plaintiff attributes to Wolf were true (which Defendant denies), Plaintiff's harassment claim fails as a matter of law because it was not included on Plaintiff's EEOC charge. ECF No. 27. Plaintiff does not address exhaustion in her opposition. ECF No. 30.

Defendant is correct regarding Plaintiff's failure to exhaust. Plaintiff's February 7, 2018 EEOC charge addresses her poor

performance evaluation but makes no mention of a hostile work environment or harassing comments by Wolf. ECF No. 27-4, PageID.473. An employee alleging employment discrimination in violation of Title VII must first file an administrative charge with the EEOC that is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974)). The only exception to this rule is when the allegations in the complaint can be reasonably inferred from the facts alleged in the EEOC charge. *Id.* at 362.

Here, Plaintiff's sparse February 7, 2018 EEOC charge, which makes no mention of harassment or Wolf's alleged comments, cannot be said to have included information that would have allowed the EEOC to reasonably infer her harassment claims. Consequently, Plaintiff's harassment claims must be dismissed for failure to exhaust. *See Younis*, 610 F.3d at 362.

### b. <u>Claim Two: Violation of the Americans with Disabilities Act of 1990 (ADA)</u>

#### i. Contentions

Plaintiff contends that Dawn failed to accommodate her disability because (i) there was a ten business-day delay between the day when Plaintiff said she would be able to return to work with accommodations and when Dawn offered her the position of sales analyst, and (ii) because the sales analyst position was "busy work" and "less favorable and less secure than her old [position]." Second Am. Compl. ¶¶ 63, 67, ECF No. 23, PageID.165; ECF No. 30, PageID.30.

In its brief, Defendant argues that Plaintiff's sales analyst role was not an adverse employment action[1] and that Plaintiff's claim that Dawn failed to offer her a reasonable accommodation from June 26th through July 12, 2018 lacks merit because Defendant was diligent in finding Plaintiff a new position compatible with her restrictions in ten business days. ECF No. 27, PageID.231-33.

#### ii. Legal Standard

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the

---

[1] As noted above, at oral argument, Defendant appeared to concede that moving Plaintiff to this position was an adverse employment action.

22

disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA's definition of "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity." *Id.* at § 12112(b)(5)(A).

To establish a prima facie case of disability discrimination under the ADA, Plaintiff must show: "1) [she] is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007).

### iii. Analysis

With regard to whether Plaintiff's voluntary transfer to the sales analyst position constituted an adverse employment decision

or pretext for discrimination, the Court adopts the same reasoning and conclusion expressed above, to the effect that Plaintiff has not put forth any evidence to rebut Dawn's proffered nondiscriminatory reasons for its actions in transferring her.

Plaintiff's claim that Defendant's ten business-day delay in finding her a new position constituted a stand-alone violation is similarly unavailing. The Sixth Circuit has held that "an employee cannot base a disability discrimination claim upon an employer's delay in providing a requested accommodation where the delay is due to internal processing or to events outside the employer's control." *Gerton v. Verizon S. Inc.*, 145 F. App'x 159, 168 (6th Cir. 2005).

Here, Plaintiff informed Defendant on June 26, 2018 that she would be needing a new position that accommodated her "difficulty with concentration, negotiating, managing contracts, [and] interacting effectively with shareholders." ECF No. 27-4, PageID.467. The record indicates that Plaintiff and Defendant had multiple conversations in late June and early July regarding the scope of her restrictions, and Defendant informed her that there may be a delay in finding her a new position because employees were out of the office for an extended period for the July 4th holiday. *See* Vaughn Dep., ECF No. 27-3, PageID.331-32. Plaintiff has pointed to no other open position at the time that would have been

24

compatible with her restrictions, and Plaintiff has presented no evidence that Defendant was not making reasonable efforts to find Plaintiff a new position during the time period Plaintiff cites. Defendant ultimately found Plaintiff a position on July 13, 2018— or 11 days after Plaintiff's scheduled July 2, 2018 return. Under the ADA, employers are not "obligate[d] . . . to make on-the-spot accommodations of the employee's choosing," *Brumley v. U.P.S.*, 909 F.3d 834, 840 (6th Cir. 2018), and here there is no evidence in the record from which a reasonable jury could find that the ten-day window was due to anything other than the reasonable amount of time it took for Defendant to locate a position that met the restrictive conditions required by Plaintiff coupled with normal internal corporate processing delays. The Court finds that the evidence in the record is insufficient to create a genuine issue of fact on the question of whether Defendant's ten-day delay over the July 4th holiday constituted a stand-alone failure to reasonably accommodate Plaintiff's disability under the ADA.

### c. <u>Claim Three: Gender/Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act</u>

Plaintiff alleges sex discrimination in the Second Amended Complaint, but includes no specific facts detailing how she was discriminated upon based on her sex, and does not address this

claim in her opposition to Defendant's motion for summary judgment at all. Plaintiff has apparently abandoned this claim. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x. 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

### d. Claim Four: Retaliation in Violation of Title VII of the Civil Rights Act of 1964 and the ADA

#### i. Contentions

Plaintiff contends that Defendant retaliated against her for complaining about her 2017 performance review by placing her in a less desirable temporary position "followed by an outright demotion where she lost a big portion of her salary." ECF No. 30, PageID.733. Plaintiff argues that there is a causal connection between her complaints and the adverse action "because if Plaintiff never filed the complaint against Mr. Wolf, the entire chain of events that led to Plaintiff's demotion would not have occurred." *Id.* at PageID.733.

Defendant contends that Plaintiff's retaliation claim fails because Plaintiff cannot establish a causal connection between her protected activity and Defendant's action in moving her to inventory planner, and because Dawn had legitimate, non-

discriminatory reasons for eliminating Plaintiff's position during its company-wide reorganization. ECF No. 27, PageID.235.

### ii. Legal Standard

Title VII prohibits retaliation against an employee "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an allegedly unlawful employment practice. 42 U.S.C. § 2000e–3(a).

To establish a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity; (2) that Defendant knew of the protected activity; (3) "defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009). Plaintiff must be able to show but-for causation; that is, "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

If Plaintiff establishes this prima facie case, the burden shifts to Defendant to establish legitimate, nondiscriminatory reasons for the adverse employment action. Once such legitimate reasons are

proffered, Plaintiff must then demonstrate by a preponderance of the evidence that the proffered reasons were a mere pretext for discrimination. Plaintiff may do so by showing that (1) the proffered reasons have no basis in fact, (2) the proffered reasons did not actually motivate the action, or (3) they were insufficient to motivate the action. *Barrett v. Lucent Techs., Inc.*, 36 F. App'x 835, 841 (6th Cir. 2002). Plaintiff bears the burden of persuasion throughout the entire process. *Id.*

### iii. Analysis

Plaintiff filed her first EEOC charge on February 7, 2018, and her second charge on July 12, 2018. ECF No. 27-4, PageID.473-74. On July 13, 2018, Plaintiff was offered the temporary sales analyst role, and approximately eight months later, on March 11, 2019, Plaintiff was informed that her sales analyst role was being eliminated. *Id.* at PageID.476. She was then offered an inventory planner position. *Id.* Plaintiff argues that there is a causal connection between her complaints and her move to sales analyst and later inventory planner because, but for her complaint regarding her 2017 performance review, "the entire chain of events that led to Plaintiff's demotion would not have occurred." ECF No. 30, PageID.733.

Plaintiff is no doubt correct: had she not protested her 2017 performance review, she would not have raised the issues that were

28

the basis for her request to be transferred to the sales analyst role, and had she not been moved to the sales analyst role, she would not have been working in that position when it was eliminated eight months later. Plaintiff is incorrect, however, that she has presented sufficient evidence for a jury to find that Dawn "would not have taken the adverse employment action had the plaintiff not engaged in a protected activity." *Barrett*, 36 F. App'x at 841. This is because Plaintiff has not provided any evidence that it was her discrimination complaint, *and not her request to be transferred* that started the chain of events she cites. The distinction may be a fine one, but it is fatal for Plaintiff's retaliation claim.

As a threshold matter, for the reasons previously cited, despite Defendant's concession, the case law does not support a finding that Plaintiff's move to the sales analyst role under these circumstances was an adverse employment action. Nor did Plaintiff offer evidence contravening Defendant's non-discriminatory reasons for that transfer. *See* Section III. With respect to the move to inventory planner, even assuming that it constituted an adverse employment action, Plaintiff cannot establish a causal connection between her complaints and this action for several reasons.

First, more than eight months lapsed between the time Plaintiff filed her second EEOC complaint and the reorganization that caused her sales analyst position to be eliminated. In this

29

Circuit, "[t]emporal proximity alone in the absence of other direct or compelling circumstantial evidence is generally not sufficient to support a finding of causal connection." *Barrett*, 36 F. App'x at 843. Temporal proximity may establish causation sufficient to support a prima facie case only if nearness in time between the protected conduct and the retaliatory action is "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Here, there is an eight-month gap between when Plaintiff filed her second EEOC charge and when Plaintiff's sales analyst role was eliminated. Other courts have found that even significantly shorter periods between the protected activity and adverse action were not sufficient to create a triable issue on causation. *See Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (absent additional evidence, two to five months insufficient to create a triable issue on causation); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (four months insufficient to support an inference of retaliation).

Moreover, additional facts undercut any inference that Plaintiff was "demoted" to the inventory planner position out of a desire to retaliate against her for filing her EEOC charge and making complaints about her performance review. For one, Plaintiff was specifically encouraged by Defendant to apply for the director of inventory planning position on October 16, 2018. ECF No. 27-4, PageID.472. Plaintiff said she would apply but ultimately

did not. *Id.* The individual who applied and later accepted the position became Plaintiff's boss when she was moved to the inventory planner position. Vaughn Dep., ECF No. 27-3, PageID.346. As noted above, this conduct is consistent with a desire to see Plaintiff succeed and achieve a higher-level position in the company, not with an intent to retaliate against her and demote her.

Second, it is undisputed that Wolf, the individual against whom she filed the complaint, played no part in the decision to eliminate Plaintiff's sales analyst role. Lioy Decl. ¶ 10, ECF No. 27-2, PageID.244. Indeed, the record is devoid of any evidence that the decision-makers at Dawn who made the call to eliminate Plaintiff's sales analyst position were even aware of her complaints.

Third, despite regularly checking the open positions listed on the Dawn intranet, Plaintiff has identified no other positions for which she would have been qualified that were open during the time she was a sales analyst. Vaughn Dep., ECF No. 27-3, PageID.355.

Finally, Plaintiff has offered no evidence that her Romulus sales analyst role was eliminated for any reason other than as part of a larger corporate restructuring. There is testimony in the record that dozens of other employees at Dawn lost their jobs as a result of the restructuring and more than one hundred were moved to

31

other, lower-paying positions. Lioy Decl. ¶ 7, ECF No. 27-2, PageID.243. Even if Plaintiff were to have been found to have established a prima facie retaliation case, this record contains evidence of Defendant's legitimate, nondiscriminatory reason for eliminating Plaintiff's position. The burden would shift back to Plaintiff to demonstrate by a preponderance of the evidence that the proffered reasons for eliminating her job were a mere pretext for discrimination, and Plaintiff would need to show that either "(1) the proffered reasons have no basis in fact, (2) the proffered reasons did not actually motivate the action, or (3) they were insufficient to motivate the action." *Barrett*, 36 F. App'x at 841. Here, Plaintiff has provided no evidence capable of supporting any of the three findings above. Consequently, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## IV.    Conclusion

For the reasons above, Defendant is entitled to summary judgment on each of Plaintiff's four claims. Defendant's Motion for Summary Judgment (ECF No. 27) is **GRANTED**.

   **IT IS SO ORDERED.**

Dated: August 25, 2020       s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE